UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IQBAL N. SULEHRIA,

                            Plaintiff,

       -against-

THE CITY OF NEW YORK, JAMES
MCINTOSH *(individually and in his official
capacity)*, VALRIE HOYTE *(individually and in
her official capacity)*, HILTON WORREL
*(individually and in his official capacity)*, and
JOHN AND JANE DOES 1–20,

                            Defendants.
-----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 18 2014 ★
BROOKLYN OFFICE

**MEMORANDUM & ORDER**

13-cv-6557 (ENV) (VVP)

VITALIANO, D.J.,

On November 22, 2013, plaintiff Iqbal N. Sulehria, appearing *pro se*, filed this action against defendants the City of New York ("the City"), James McIntosh, Valerie Hoyte, and Hilton Worrel, in their individual and official capacities, as employees of Fedcap[1] allegedly responsible for administering programs for the

---

[1] Fedcap, a nonprofit organization dedicated to assisting in-need individuals with obtaining employment opportunities and economic independence, administers the New York City Human Resources Administration's Wellness, Comprehensive Assessment, Rehabilitation and Employment program. While plaintiff has not explicitly named Fedcap as a defendant in this action, his allegations clearly take aim at the employer of Hoyte and Worrel, which is not the City, as plaintiff avers, but Fedcap. Affording plaintiff the solicitude he is due as a *pro se* litigant, the Court liberally and constructively construes his complaint as raising claims against Fedcap, as well. *See Gonzalvo v. State of New York*, No. 9:11-cv-0909, 2013 WL 4008881 (N.D.N.Y. 2013) (district court's authority substitute defendants in *pro se* complaint *sua sponte* is "well supported," collecting cases); *Dockery v. Tucker*, No. 97-cv-3584, 2006 WL 5893295, at *7 (E.D.N.Y. 2006). The Clerk of Court is directed to amend the caption accordingly.

1

City's Department of Social Services, as well as twenty unnamed John and Jane Doe employees of the City. Sulehria's application to proceed *in forma pauperis* is granted. Plaintiff's complaint is dismissed without prejudice as to Sulehria's § 1983 claims against Fedcap and the City, while it sufficiently states § 1983 claims against Hoyte, Worrel, and Fedcap, Title VI claims against Fedcap and the City, and state law claims against Hoyte, Worrel, Fedcap, and the City. The balance of the complaint is dismissed with prejudice, including those claims against McIntosh, which are dismissed in their entirety.

## Background

Sulehria's complaint begins by providing a meandering account of his travails in seeking various forms of public assistance from the City. At points in 2012, Sulehria claims to have applied for—and been denied—Medicaid benefits, to have been asked to keep certain appointments in connection with other unspecified forms of public assistance, to have been erroneously charged for some service, and to have attended various fair hearings, which appear to have been decided in his favor. (Compl. ¶¶ 11, 19–22). Later, in 2013, Sulehria appears to have, on multiple occasions, applied for emergency financial assistance to cover moving costs, but, to date, no such relief has been granted. (Compl. ¶¶12–18). On one of these occasions, Sulehria filed a complaint with McIntosh, who is apparently the director of a job center operated by the Department of Social Services in Bay Ridge, Brooklyn. (Compl. ¶ 17). That complaint appears to have been rejected.

Sulehria's seemingly milquetoast struggles took a more egregious turn on June 12, 2013. On that day, he claims, he appeared at the Fedcap office on

Montague Street in Brooklyn, where he was subjected to "humiliation, mental torture, [] illegal discrimination, and retaliation" at the hands of Worrel and Hoyte, a case manager and a supervisor, respectively, at the Fedcap location. (Compl. ¶ 23–24). Allegedly, the encounter began with Worrel refusing to see Sulehria at his appointed time, opting instead to assist a young woman who arrived later, while taunting "I will see this young black beauty first." (Compl. ¶ 23). Later, after his interview with Worrel began, Sulehria claims that he told Worrel that he was unable to stay for his full appointment, because of a conflicting doctor's appointment, at which point Worrel told him he would lose his benefits for failing to comply. It was then that Hoyte apparently joined Worrel and demanded to know why "a Muslim shit" like Sulehria would not "follow [] instructions," while Worrel called plaintiff a "Pakistani bitch" and threatened that he must "comply with [Worrel's] orders." Sulehria further alleges that Hoyte and Worrel then spat on him repeatedly, and "detained and harassed" him for four hours.

## Standard of Review

A civil action complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require a plaintiff to provide "detailed factual allegations" in support of his or her claims in order to survive a motion to dismiss, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Indeed, mere conclusory allegations or "naked assertions" will not survive a motion to dismiss. At least some "further factual enhancement" providing substance to the

claims alleged is required. *Twombly*, 550 U.S. at 557.

When a plaintiff proceeds without legal representation, the court must regard that plaintiff's complaint in a more liberal light, affording the pleadings of a *pro se* litigant the strongest interpretation possible. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 471 (2d Cir. 2006) (per curiam). Even so, a court must dismiss an *in forma pauperis* complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## Discussion

Sulehria avers, in conclusory fashion, that his allegations give rise to various claims under sections of the Civil Rights Act,[2] makes constitutional claims under the First, Fourth, Fifth,[3] and Fourteenth Amendments, and a host of state common law theories.[4] Many of these putative claims are plainly and entirely without merit. For instance, no contractual obligation exists in this context that may support a claim of discrimination under § 1981. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476

---

[2] Sulehria styles his § 1983 claim as a "*Monell* claim," though the Court liberally construes it to be a civil rights claim alleged against all defendants, not just the City.

[3] While he does not name the Fifth Amendment as a ground for relief as he does with the other listed constitutional amendments, Sulehria asserts procedural and substantive due process as grounds for his 11th and 12th enumerated claims, respectively.

[4] The litany of claims references the Declaratory Judgment Act, which does not create a cause for relief but a remedy. Sulehria makes no specific request for a declaration (beyond defendants' liability), nor is declaratory relief appropriate given the nature of his grievances.

4

(2006). Also, only vague, conclusory allegations of conspiracy are advanced in support of a § 1985 claim. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (allegations of conspiracy were "baseless," lacking any evidence of a "meeting of the minds" among alleged conspirators); *see also Iqbal*, 556 U.S. at 680–81. Likewise, Sulehria's evocative, yet empty, invocations of constitutional amendments do no state claims upon which relief can be granted. Sulehria's claims on these grounds are, therefore, dismissed with prejudice as against all defendants, and without leave to amend since any attempted amendment would be futile.

There are other square-peg-in-round-hole claims. Title VI and Title IX claims are properly brought against programs receiving federal assistance, and not against persons in their individual or official capacities. *See T.C. v. Valley Cent. School Dist.*, 777 F. Supp. 2d 577, 593–94 (S.D.N.Y. 2011). For this reason, Sulehria's claims under those statutes are dismissed with prejudice against all defendants, save the City and Fedcap, which receive federal funding. His claim under Title IX, therefore, must also be dismissed, because he does not plead any hint of facts against any defendant to support a claim of gender discrimination, and Title IX is limited to gender discrimination claims.

Similarly, while a municipality can be held liable under § 1983, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), in order for a plaintiff to succeed on such a claim, he must demonstrate "both a violation of his [] constitutional rights and that the violation was caused by a municipal policy or custom," *Bradley v. City of*

5

*New York*, No. 08-cv-1106, 2009 U.S. Dist. LEXIS 51532, at *6 (E.D.N.Y. 2009).[5]
Sulehria has not done so here. Although he makes sweeping assertions that the City was "grossly negligent" in failing to "psychologically test" its employees, as some countermeasure against bias, and that the City did not provide documents he requested in connection with his fair hearings, Sulehria fails to plead that a cognizable policy or practice of the City has violated his constitutional rights. For these reasons, plaintiff's § 1983 claims against the City are dismissed without prejudice, and with leave to replead, should plaintiff be able, in good faith, to allege that an official City policy or practice led to his injuries at the hands of the individual defendants.

Finally, and relatedly, plaintiff fails to plead facts sufficient to support a § 1983 claim against Fedcap, a non-state entity. The Second Circuit has set out the three situations in which "the actions of a nominally private entity are attributable to the state": (1) when the entity is "controlled" by the state; (2) when the entity's functions are "entwined" with state policies; or (3) when the entity "has been delegated a public function by the [s]tate." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Without more, the lonely

---

[5] Put another way, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Bradley*, 2009 U.S. Dist. LEXIS 51532, at *7 (detailing standards for locating a link between policy and injury). Similarly, a municipal employer cannot be held liable under § 1983 simply on a theory of *respondeat superior*, that is, vicarious liability. *See Walker v. New York*, 974 F.2d 293, 301 (2d Cir. 1992).

allegation that Fedcap administers a single program in cooperation with the City, or is a contractor for the City, does not suggest that Fedcap's activities are attributable to the state. *See, e.g., Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts"). *Coleman v. Town of Hempstead*, 30 F. Supp. 2d 356, 362 (E.D.N.Y 1999) (collecting cases). As such, plaintiff's § 1983 claims against Fedcap are also dismissed without prejudice, and with leave to replead. Again, leave to replead is granted to the extent plaintiff can offer the missing factual allegations in good faith.

With that preface, some of Sulehria's claims still warrant highlighted attention. First up is plaintiff's Title VI claim against Fedcap and the City. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In order to support a claim under Title VI, Sulehria must establish that he was intentionally discriminated against on the basis of his national origin or race, and that discriminatory intent was a substantial or motivating factor in the conduct that injured him. *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001). In this case, Sulehria alleges discriminatory conduct by Hoyte and Worrel, acting in the shoes of the City's Department of Social Services, that was blatantly discriminatory. The pleading of a cognizable injury causally connected to such conduct could support a claim under Title VI.

As a compliment to that claim, moreover, plaintiff purports to advance state

7

law claims against the City, which are more properly raised against Hoyte and Worrel's employer, Fedcap. These claims rely either on the theory of *respondeat superior*, or of negligent hiring, training, and supervision, depending on whether those employees acted within the scope of their official duties during the events of June 12, 2013. The Court is satisfied that Sulehria has pleaded sufficient facts to pursue these claims. *See also Hill v. City of New York*, No. 05-civ.-9473, 2006 WL 2347739 (S.D.N.Y. 2006) ("'[w]hether an employee was acting within that scope [of employment] at a particular time requires a fact-intensive inquiry' and cannot be resolved on this motion to dismiss." (quoting *Cromer Fin. Ltd. v. Berger*, 245 F. Supp. 2d 552, 561 (S.D.N.Y. 2003))). For this reason, his state law claims against Fedcap must remain, but are dismissed with prejudice against the City.

Moving on to the claims against McIntosh, plaintiff alleges only that he submitted a complaint and an application for benefits to him. The grievance seems to be that the filings went unresolved. Accepted as true, these omissions do not entitle Sulehria to relief against McIntosh under § 1983. His failure to grant plaintiff's requests, as Sulehria describes them, cannot constitute a constitutional deprivation. Moreover, McIntosh is in no way implicated by the misconduct attributed to Hoyte and Worrel, and he is therefore not liable for it. *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("personal involvement of defendants in alleged constitutional violations is a prerequisite to an award of damages under § 1983"). The § 1983 claim against McIntosh, the only federal claim alleged against him, is dismissed with prejudice, and the Court declines to exercise supplemental

jurisdiction over any state law claim that Sulehria might have arguably attempted to allege against him. Any state claim is dismissed without prejudice.

It is a different story, finally, when it comes to the other individually named defendants, Hoyte and Worrel. Section 1983 provides a cause of action against "any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). As noted above, the Court accepting the truth of the facts alleged in the complaint, for the purposes of this decision, it appears that Sulehria has adequately stated a claim, for purposes of 28 U.S.C. § 1915, that Hoyte and Worrel, acting under color of state law, physically attacked and intentionally discriminated against him on the basis of his ethnicity, national origin, and religion in contravention of his constitutional rights. *See Hayut v. State Univ. of New York*, 352 F.3d 733, 744 (2d Cir. 2003) ("For purposes of a section 1983 action, a defendant necessarily 'acts under color of state law when he abuses the position given to him by the State.'" (quoting West v. Atkins, 487 U.S. 42, 50 (1988))). He has also properly pleaded constitutional injury. *See Pabon v. Wright*, 459 F.3d 241, 253 (2d Cir. 2006). Sulehria's § 1983 claims against Hotye and Worrel survive this round.

## Conclusion

In line with the foregoing, Sulehria's § 1983 claims against Fedcap and the City are dismissed without prejudice. The balance of plaintiff's complaint is also dismissed with prejudice, except as to his (1) § 1983 claims against Hoyte, Worrel, and Fedcap; his (2) Title VI claims against Fedcap and the City; and (3) his state

law claims against Hoyte, Worrel, Fedcap, and the City, all of which shall stand.

Plaintiff is granted leave to amend his complaint to allege facts sufficient to support those claims dismissed without prejudice, provided he is able to do so in good faith. Pursuant to this grant of leave, Sulehria may file an amended complaint, but must do so within 30 days of the entry on the docket of this Memorandum and Order. Should plaintiff decide to file an amended complaint, it shall be captioned "Amended Complaint," and bear the same docket number as this Order. Plaintiff is advised that the amended complaint will completely replace the original complaint.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
August 8, 2014

s/Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge